**SUNNY ACRES VILLA, INC., Petitioner,**

v.

**Charla Sue COOPER, Respondent.**

**No. 99SC865.**

Supreme Court of Colorado,
En Banc.

May 29, 2001.

Rehearing Denied June 25, 2001.*

---

* Chief Justice MULLARKEY, Justice MARTINEZ        and Justice BENDER would grant.

Ritsema & Lyon P.C., Susan Kurachi Reeves, Colorado Springs, CO, Attorneys for Petitioner.

Susan D. Phillips, Denver, CO, Attorney for Respondent.

Justice COATS delivered the Opinion of the Court.

Sunny Acres Villa, Inc., the employer in the underlying action for permanent total disability benefits, sought review of the court of appeals' decision in *Cooper v. Industrial Claim Appeals Office*, 998 P.2d 5 (Colo.App. 1999), by writ of certiorari. The court of appeals set aside the order of an administrative law judge ("ALJ"), which denied permanent total disability ("PTD") benefits to claimant Charla Cooper on the ground that her injuries were not substantially work-related. The court of appeals held instead that the doctrine of collateral estoppel operated to foreclose any inquiry into causation, which it considered already to have been determined in connection with Cooper's application for temporary total disability ("TTD") benefits. Because a claim for a temporary disability award does not present an employer with the same incentive to litigate as does a claim for a permanent award, issues presented with regard to the latter cannot be deemed fully and fairly litigated at a prior proceeding for the former. Accordingly, the judgment of the court of appeals is reversed and the case is remanded for further proceedings consistent with this opinion.

## I.

The incident giving rise to this action occurred on May 13, 1992. It was uncontested that Respondent Charla Cooper, a nurse employed by Sunny Acres, slipped and fell while at work and sustained injuries to her head, hip, back, pelvis, foot, ankle, knee and shoulder. Cooper submitted a claim for TTD

benefits [1], in response to which Sunny Acres admitted liability and agreed to pay TTD benefits and other related medical expenses. On February 3, 1993, Cooper returned to work, thereby terminating her entitlement to TTD benefits, *see* § 8–42–105(3)(b), but continued to experience physical and psychological problems. In June of 1993, Cooper attained maximum medical improvement ("MMI") [2] with a 5% overall impairment according to her treating physician. Over the next several months, however, Cooper's physical and psychological condition deteriorated, and she requested a review and reopening of her TTD award, pursuant to section 8–43–303(2)(a), as of December 8, 1993. Sunny Acres contested this request, arguing that Cooper's deteriorating condition was not attributable to her work-related injury.

Following a hearing on Cooper's condition, the presiding ALJ issued an order dated August 12, 1994, in which he found that Cooper had proven by a preponderance of the evidence that her condition had worsened to the point that she had again become temporarily and totally disabled as of December 8, 1993. Finding nothing in the Workers' Compensation Act to the contrary, the ALJ explained that he did not consider an independent medical exam necessary for purposes of adjudicating a claim for temporary disability benefits based on a worsened condition. Included in the order was a finding that Cooper's physical and psychological impairment had been proximately caused by the work-related injury she sustained on May 13, 1992. Accordingly, Sunny Acres was ordered to provide Cooper with medical and TTD benefits as of December 8, 1993.

Cooper continued to receive TTD benefits until March 4, 1996, at which time she was again found to have attained MMI. She subsequently requested a hearing to determine her entitlement to permanent total disability

("PTD") benefits.[3] At this point, Sunny Acres requested that a division-sponsored, independent medical exam be performed on Cooper. The physician who performed that exam concluded that as of March 4, 1996, Cooper had attained MMI from a psychiatric standpoint, leaving her with a sixty percent psychiatric impairment. The physician noted, however, that Cooper's work-related injury was not a significant factor relative to her overall disability, and that the psychiatric impairment was the result of her pre-existing psychological function.

After considering several conflicting medical opinions, a second ALJ concluded that Cooper had failed to prove by a preponderance of the evidence that the work-related injury was a significant factor contributing to her permanent total disability. Without referring specifically to either collateral estoppel or the "law of the case" doctrine, Cooper argued that the second ALJ was bound by the first ALJ's finding regarding the causation of her injuries. In response, the ALJ characterized Cooper's contention as raising the "law of the case" doctrine, and found that the first ALJ's findings, made in connection with Cooper's claim for TTD benefits, were not entitled to deference because they did not concern PTD benefits specifically. As such, Cooper's claim for PTD benefits was denied.

Cooper appealed the second ALJ's rulings to the Industrial Claim Appeals Office ("ICAO"), which affirmed, and then to the court of appeals, which on rehearing set aside the order. *Cooper v. Indus. Claim Appeals Office*, 998 P.2d 5 (Colo.App.1999). Although Cooper raised the issue whether the ALJ was bound by the earlier causation finding under the doctrine of "law of the case," the court of appeals addressed the substance of Cooper's argument under collat-

1. TTD benefits are received until the first occurrence of any one of several events delineated at section 8–42–105(3), 3 C.R.S. (2000), including the attainment of "maximum medical improvement," § 8–42–105(3)(a), and returning to "regular or modified employment," § 8–42–105(3)(b).

2. Section 8–40–201(11.5), 3 C.R.S. (2000), defines "maximum medical improvement" as "a point in time when any medically determinable

physical or mental impairment as a result of injury has become stable and when no further treatment is reasonably expected to improve the condition."

3. PTD benefits continue until death but cannot be in excess of the maximum weekly benefits prescribed for injuries causing temporary total disability. § 8–42–111(1).

eral estoppel principles.[4] As it found all of the elements of collateral estoppel satisfied, the court of appeals concluded that the initial finding that the injuries were work-related, made in connection with Cooper's claim for TTD benefits, was binding on the second ALJ for purposes of adjudicating Cooper's claim for PTD benefits. Accordingly, the court of appeals set aside the final order of the ICAO and remanded the matter for reconsideration in light of the initial finding that the injury was work-related. Sunny Acres' petition for certiorari followed.[5]

## II.

Collateral estoppel, or issue preclusion, is a judicially created, equitable doctrine that operates to bar relitigation of an issue that has been finally decided by a court in a prior action. *Bebo Constr. Co. v. Mattox & O'Brien, P.C.*, 990 P.2d 78, 84 (Colo.1999); 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure: Jurisdiction* § 4403 (1981). The doctrine serves to relieve parties of multiple lawsuits, conserve judicial resources, and promote reliance on the judicial system by preventing inconsistent decisions. *Bebo Constr.*, 990 P.2d at 84. Although originally developed in the context of judicial proceedings, issue preclusion is just as viable in administrative proceedings and may bind parties to an administrative agency's findings of fact or conclusions of law. *Id.* at 85; *Indus. Comm'n v. Moffat County Sch. Dist. RE No. 1*, 732 P.2d 616, 620 (Colo.1987).

Issue preclusion bars relitigation of an issue if: (1) the issue sought to be precluded is identical to an issue actually determined in the prior proceeding; (2) the party against whom estoppel is asserted has been a party to or is in privity with a party to the prior proceeding; (3) there is a final judgment on the merits in the prior proceeding; and (4) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding. *Bebo Constr.*, 990 P.2d at 85; *Guar. Nat'l Ins. Co. v. Williams*, 982 P.2d 306, 308 (Colo. 1999); *Indus. Comm'n*, 732 P.2d at 619–20. Only when each of these elements has been satisfied are the equitable purposes of the doctrine furthered by issue preclusion.

It is settled law that a full and fair opportunity to litigate an issue requires not only the availability of procedures in the earlier proceeding commensurate with those in the subsequent proceeding, *Maryland Cas. Co. v. Messina*, 874 P.2d 1058, 1062 (Colo.1994), but also that the party against whom collateral estoppel is asserted have had the same incentive to vigorously defend itself in the previous action, *Salida Sch. Dist. R–32–J v. Morrison*, 732 P.2d at 1166– 67; Restatement (Second) of Judgments § 28(5)(c) & cmt. j (1982).[6] A party necessarily lacks the same incentive to defend where its exposure to liability is substantially less at the earlier proceeding. *Salida*, 732 P.2d at 1166–67. In addition to the amount of potential money awards, significant variations in exposure may arise from differences in the finality or permanence of judgments, *see In re C.M.*, 675 N.E.2d 1134, 1137–38 (Ind.Ct.App.1997) (recognizing that

---

4. Sunny Acres contends that Cooper waived any argument regarding collateral estoppel because she failed to specifically raise it in the proceedings below, having instead raised the "law of the case" doctrine. Because we conclude that the court of appeals erred by applying the doctrine of collateral estoppel, however, it is unnecessary to address whether Cooper waived her ability to assert it.

5. This court granted certiorari to consider the following issues:
   (1) whether the claimant waived the affirmative defense of collateral estoppel;
   (2) whether the court of appeals erred in applying the doctrine of collateral estoppel to the present case; and

(3) whether the court of appeals erred by determining that the doctrine of collateral estoppel barred the ALJ's determination that the claimant's injury was not a significant factor in her permanent disability.

6. Whether or not the division-sponsored, independent medical exam, considered unnecessary by the first ALJ for the adjudication of temporary disability benefits based on a worsened condition but relied upon by the second ALJ in denying permanent disability benefits, amounted to a significant difference in available procedures, the absence of the same incentive to defend is sufficient to demonstrate no full and fair opportunity to litigate the issue.

parent's incentive to defend in a "Child in need of supervision" proceeding, where resulting order is temporary in nature and entitles parent and child to government services, is dramatically different from incentive to vigorously litigate same issues in parental-termination proceeding, where the result is permanent and completely severs parent-child relationship); *In re Frederick,* 405 Mass. 1, 537 N.E.2d 1208, 1211–1212 (1989) (recognizing that even though standards of proof and findings in "care and protection" proceeding are identical to those in subsequent "consent to adoption" proceeding, collateral estoppel inapplicable because incentive to litigate custody or appeal findings from earlier proceeding, which are limited and do not carry same degree of finality, may be substantially less than incentive to litigate or appeal findings in adoption proceeding, which permanently terminates legal parent-child relationship), as well as from differences in the potential duration of orders to provide installments of a fixed amount, rendering the party's overall exposure a direct consequence of the order's duration. *See, e.g., Ferris v. Hawkins,* 135 Ariz. 329, 660 P.2d 1256, 1259 (App.1983) (noting marked difference in available remedies where one was limited in compensation and duration and the other posed much greater degree of liability with long term consequences).

Although the incentive to vigorously defend might be artificially created by the operation of collateral estoppel principles, augmenting a party's incentive to litigate in the first instance would undermine the very purpose behind permitting temporary orders or expedited and inexpensive adjudication of smaller claims in a number of contexts. In the analogous context of unemployment proceedings, this court in *Salida* recognized that:

> If findings entered at an unemployment compensation hearing may be used to establish the employer's liability for unlawful discharge in a subsequent lawsuit, the employer would have a strong incentive to use its superior resources consistently to oppose a discharged employee's claim for unemployment benefits. Issues presented to the Division will be contested strongly,

and the hearings will become lengthy and more detailed, and will no longer be suited to the prompt resolution of unemployment compensation claims.

*Salida,* 732 P.2d at 1165; *see also Williamsen v. People,* 735 P.2d 176, 182 (Colo.1987) (recognizing that compelling reasons may exist not to apply collateral estoppel where proceedings are tailored to promote prompt, inexpensive adjudication of smaller claims).

■ These considerations apply equally to the adjudication of workers' compensation benefits. *See Messina,* 874 P.2d at 1066 n. 13 (recognizing that rationale underlying inapplicability of collateral estoppel to unemployment hearings is useful when analyzing same doctrine in workers' compensation cases). Temporary total disability benefits are limited to statutorily prescribed amounts and may extend only until the occurrence of certain statutorily prescribed events. Permanent total disability benefits continue until the death of the disabled worker. The difference in potential duration of benefits alone demonstrates the difference in exposure to an employer. Furthermore, one of the primary purposes underlying Colorado's Workers' Compensation Act is to "assure the quick and efficient delivery of disability and medical benefits to an injured worker at a reasonable cost to employers, without the necessity of any litigation." § 8–40–102(1), 3 C.R.S. (2000). The application of issue preclusion to matters initially addressed in a temporary disability hearing would likely compel employers to vigorously contest initial determinations regarding workers' compensation benefits, in turn promoting litigation and unduly delaying receipt of any benefits. *See Tenorio v. State,* 931 P.2d 234, 240 (Wyo. 1997) (expressing concern that application of collateral estoppel to permanent disability hearings would substantially delay payment of legitimate claims and undercut intent of Wyoming's Act by forcing employers to fully litigate all causation issues at initial proceeding). If collateral estoppel were applicable to the factual findings made during proceedings for disability benefits, the underlying policies supporting quick adjudication of such benefits, which involve narrow issues of law and

afford a limited remedy, would be severely hampered.

While not articulating a consistent rationale for doing so,[7] courts addressing this issue in other jurisdictions have similarly refused to treat the causation of permanent injuries as having been resolved by determinations of causation relative to temporary injuries. *See, e.g., Betts v. Townsends, Inc.,* 765 A.2d 531, 535 (Del.2000) (holding that determination of causation in permanent disability hearing not barred by estoppel because "[w]hether an industrial accident caused temporary total disability or permanent partial disability are two distinct questions"); *In re Bailey,* 769 A.2d 360, 362, 2001 N.H. LEXIS 54, *4 (N.H.2001) (declining to apply issue preclusion where agency awarded benefits for temporary disability but made no finding as to permanent disability); *Appeal of Hooker,* 142 N.H. 40, 694 A.2d 984, 986–88 (1997) (finding collateral estoppel inapplicable even where alleged injury giving rise to both proceedings is the same and allegedly flows from same work-related injury because issue of causation determined in TTD hearing is different from issue of causation relevant to subsequent medical benefits hearing); *Tenorio,* 931 P.2d at 240 (recognizing the inherent policy problems associated with applying issue preclusion to permanent disability proceedings and construing Wyoming's workers' compensation act as inconsistent with the doctrine in that context).

Because an employer always risks an award of substantially longer duration at a proceeding to determine permanent total disability than it does at a proceeding to determine temporary total disability, it never has the same incentive to vigorously litigate issues at the latter that it does at the former. Furthermore, augmenting the stakes of the temporary disability hearing by affording collateral estoppel effect to findings made therein would contravene an important purpose of the Workers' Compensation Act served by treating temporary and permanent disability differently. Whether or not issues involving temporary and permanent injuries are properly treated as identical, the doctrine of collateral estoppel therefore does not apply.

### III.

Accordingly, the court of appeals erred by applying collateral estoppel to preclude Sunny Acres from litigating the issue whether Cooper's permanent disability was work-related. The judgment of the court of appeals is therefore reversed and the case is remanded for further proceedings consistent with this opinion.

Justice MARTINEZ dissents, and Chief Justice MULLARKEY and Justice BENDER join in the dissent.

Justice MARTINEZ dissenting:

In this case, two Administrative Law Judges (ALJs) disagreed as to whether the claimant's injuries were work-related. Although the ALJ at the hearing on temporary total disability (TTD) benefits found that the physical and psychological injuries suffered by Charla Sue Cooper (Cooper) were work-related, the ALJ at the subsequent hearing on permanent total disability (PTD) benefits made different credibility determinations and concluded that the injuries were not work-related. Each ALJ addressed Cooper's eligibility to receive workers' compensation benefits and decided whether her physical and psychological injuries were work-related. The only issue at the PTD hearing that was not previously resolved at the TTD hearing was the greater extent of disability required for a determination of PTD. Nonetheless, the majority finds that the identical issue of whether Cooper's injuries were work-related was not fully and fairly litigated at the temporary hearing, and declines to apply issue preclusion to bar the employer from relitigat-

---

**7.** Much of this inconsistency stems from the fact that similar concerns related to the application of issue preclusion in this context can be expressed in terms of either the similarity between the previously litigated and presently litigated issues or the estopped party's opportunity to fully and fairly litigate the previously litigated issue. *See*

18 Wright, *supra,* § 4423, at 220 ("As with many other limitations on issue preclusion, concern with the opportunity to litigate in the first case is easily justified when it is mingled with uncertainty as to identity of the issues or actual litigation.").

ing this issue at the permanent hearing. I disagree with the majority; I would apply the doctrine of issue preclusion under these circumstances. Accordingly, I respectfully dissent.

As the majority explains, Cooper suffered a head injury, and other injuries, when she slipped and fell while working for Sunny Acres Villa, Inc. (Sunny Acres) as a nurse. After initially receiving TTD benefits and participating in a vocational rehabilitation program, Cooper resumed her nursing duties and TTD benefits discontinued. However, she continued to suffer psychologically. After her condition deteriorated to the point that she could no longer work, she requested a hearing on the resumption of TTD benefits. At that hearing, the first ALJ assigned to the case found that Cooper's disabling psychological impairment resulted from her occupational head injury. He held that Cooper had established by a preponderance of the evidence that her condition had worsened since the time that benefits were discontinued, and that she had become temporarily and totally disabled.

After Cooper reached Maximum Medical Improvement (MMI) with regard to her worsened condition, she requested a hearing on PTD. Following the hearing, a second ALJ denied Cooper's request for PTD benefits and medical benefits. The second ALJ determined that Cooper's industrial injury was not a significant factor in her claim for PTD benefits.[8] Despite the first ALJ's earlier holding that Cooper's psychological impairment resulted from her occupational head injury, the second ALJ found that Cooper had not suffered a closed head injury during her slip and fall. In doing so, the second ALJ simply resolved factual issues of credibility differently than the first ALJ had resolved the same issues. Although the second ALJ had before him a second division sponsored independent medical exam, the examining doctors simply relied on the division sponsored independent medical exam submitted at the earlier hearing. Thus, the under-

lying evidence concerning the relationship between Cooper's fall and the symptoms she was experiencing was not different in the two hearings. The two ALJs simply disagreed about whether Cooper's psychological impairment was work-related.

A preliminary question presented in this case is the contention of Sunny Acres that Cooper failed to raise issue preclusion at the PTD hearing before the second ALJ. The majority finds it unnecessary to decide whether Cooper raised issue preclusion because they conclude that the doctrine does not apply to this case. However, I believe that the question of whether issue preclusion has been adequately raised must first be decided before addressing whether the doctrine should be applied in these particular circumstances.

Addressing this preliminary question, I find that Cooper raised issue preclusion at the hearing on PTD benefits by arguing that Sunny Acres was "prohibited from relitigating" that Cooper's psychological symptoms arose from a preexisting psychiatric condition. Further, the record reveals that the parties understood the argument even though the terms "issue preclusion" or "collateral estoppel" were not specifically used. Thus, I conclude that issue preclusion was adequately raised. Therefore, I next discuss whether the doctrine should be applied in the circumstances before us.

Under the doctrine of issue preclusion, the findings of an administrative agency, acting in an adjudicatory capacity, may be binding on the parties in a subsequent proceeding if the agency resolved disputed issues that the parties had an adequate opportunity to litigate. *Dale v. Guar. Nat'l Ins. Co.*, 948 P.2d 545, 549 (Colo.1997); *Md. Cas. Co. v. Messina*, 874 P.2d 1058, 1061 (Colo.1994); *Indus. Comm'n v. Moffat County Sch. Dist. Re No. 1*, 732 P.2d 616, 620 (Colo.1987). Where issue preclusion applies, the final decision of an adjudicatory body on an issue actually litigated is conclusive as to that issue in a

---

8. The second ALJ actually issued two orders. The first order, dated April 22, 1997, was set aside after the Industrial Claim Appeals Office (ICAO) determined that the ALJ had erroneously imposed a clear and convincing burden of proof on Cooper. In the second order, dated March 8, 1998, ALJ Erickson omitted the clear and convincing standard but reached the same result. The ICAO affirmed the second order.

subsequent action. *Indus. Comm'n,* 732 P.2d at 620; *Salida Sch. Dist. R–32–J v. Morrison,* 732 P.2d 1160, 1163 (Colo.1987).

Issue preclusion bars relitigation of an issue if: (1) the issue precluded is identical to an issue actually determined in the prior proceeding; (2) the party against whom estoppel is asserted has been a party to or is in privity with a party to the prior proceedings; (3) there is a final judgment on the merits in the prior proceedings; and (4) the party against whom the doctrine is asserted has a full and fair opportunity to litigate the issue in the prior proceeding. *Guar. Nat'l Ins. Co. v. Williams,* 982 P.2d 306, 308 (Colo.1999); *Dale,* 948 P.2d at 550; *Maryland Cas. Co.,* 874 P.2d at 1061; *Indus. Comm'n,* 732 P.2d at 620; *Salida Sch. Dist. R–32–J.* 732 P.2d at 1163.

In this case, the majority opinion focuses on the fourth element of issue preclusion, whether the employer had a full and fair opportunity to litigate. Before addressing whether the employer had a full and fair opportunity to litigate, I briefly address the other elements.

In determining whether the first element of issue preclusion has been satisfied, I consider the initial eligibility requirements for any benefits under the Workers' Compensation Act. Generally, a claimant is eligible for benefits under the Workers' Compensation Act only after an initial showing that: (1) both the employer and the employee were subject to the Workers' Compensation Act at the time of the injury; (2) the employee was performing services arising out of and in the course of the employee's employment; and (3) the injury or death was proximately caused by an injury or occupational disease arising out of and in the course of employee's employment and was not self-inflicted. *See* § 8–41–301, 3 C.R.S. (2000). This eligibility is established by a sufficient nexus between the employment and the injury. *Md. Cas. Co.,* 874 P.2d at 1063; *In re Question Submitted by United States Court of Appeals,* 759 P.2d 17, 20 (Colo.1988). The sufficient nexus between the employment and the injury is generally referred to as the work-relatedness of the injury. After an initial showing of the work-relatedness of the injury, a claimant must prove the nature and extent of the resulting disability to receive benefits. *Kohnen v. Safeway Stores, Inc.,* 761 P.2d 231, 233 (Colo.Ct.App.1988). In some cases, a question of whether the injury has resolved and some intervening circumstance has caused a subsequent injury may arise. *See, e.g. United Airlines, Inc. v. I.C.A.O.,* 993 P.2d 1152, 1155 (Colo.2000); *Askew v. I.C.A.O.,* 927 P.2d 1333, 1337 (Colo.1996). Although the nature and extent of the resulting disability required for entitlement to TTD differs from that required for entitlement to PTD, these three eligibility requirements are the same for entitlement to both TTD and PTD. Thus, the first element of issue preclusion is satisfied because the work-relatedness of Cooper's injuries was an issue at both hearings.

The second element of issue preclusion is satisfied in that both Cooper and Sunny Acres were parties at the TTD and PTD hearings in this case. The third element is established because an order granting TTD benefits is a final order for purposes of applying collateral estoppel in a subsequent proceeding. *See Standard Metals Corp. v. Gallegos,* 781 P.2d 142 (Colo.Ct.App.1989)(citing *Loffland Bros. Co. v. Indus. Claim Appeals Panel,* 770 P.2d 1221 (Colo.1989)). It is the fourth element of issue preclusion the majority finds lacking, that is, whether the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding.

The majority does not apply the doctrine of collateral estoppel, and instead holds that an employer does not have a full and fair opportunity to litigate the work-relatedness of an injury at a TTD hearing. Maj. op. at 45, 47–48. Specifically, the majority asserts that an employer's incentive to litigate liability is necessarily greater at a hearing for PTD benefits. Maj. op. at 49. The majority argues that an employer lacks the requisite incentive to vigorously defend itself at a TTD hearing because TTD "benefits are limited to statutorily prescribed amounts" and last only until the occurrence of certain events, while PTD benefits continue until the death of the employee. Maj. op. at 48. In my view, differences in potential recovery, and in the possi-

ble duration of benefits, do not always have the impact on an employer's incentive to litigate that the majority apparently anticipates. Because not all employees who receive TTD benefits seek PTD benefits, and because the duration of temporary benefits can vary greatly, PTD benefits do not necessarily last longer and cost more than TTD benefits. Nonetheless, the employer who successfully challenges the work-relatedness of a claimant's injuries at a TTD hearing would not subsequently be at risk of paying PTD benefits. Accordingly, an employer does not necessarily have a greater incentive to challenge an award of PTD benefits.

The cases relied upon by the majority to support the argument that an employer does not have a full and fair opportunity to litigate at a TTD hearing involve separate and unrelated proceedings with different purposes. Conversely, workers' compensation proceedings concern a series of related benefits in a single action. For example, the majority cites *Salida Sch. Dist. R–32–J v. Morrison*, 732 P.2d at 1160, for the proposition that a party necessarily lacks the same incentive to litigate an issue where its liability exposure is substantially less at the earlier proceeding. However, *Salida* concerned the preclusive effect of findings made in an unemployment compensation proceeding on a subsequent section 1983 action. The court refused to apply issue preclusion in the section 1983 action on the basis that the school district had much greater potential liability in the section 1983 action than it did in the unemployment compensation proceeding. *Id.* at 1167. Thus, unlike the circumstances here, the issue in *Salida* arose in a separate proceeding of a very different nature with unlike remedies.

The majority also relies upon *Ferris v. Hawkins*, 135 Ariz. 329, 660 P.2d 1256 (App.1983), to support its argument. In *Ferris*, the Arizona Court of Appeals declined to apply collateral estoppel to a final judgment in an unemployment compensation action in a later state personnel board disci-

plinary action. The court found that the unemployment compensation proceedings and disciplinary actions served dissimilar and unrelated purposes and offered drastically different remedies. Thus, the court in *Ferris* declined to apply issue preclusion, concluding that to do so would defeat the intent of the legislature and the underlying purposes of the proceedings. *Ferris*, 660 P.2d at 1258.

Because the causes of action, the nature of the proceedings, and the potential exposure of the defendants in the above discussed cases are very dissimilar, the parties are not likely to have the same incentive to litigate.

In contrast, both claims at issue in this case involve the Workers' Compensation Act, the purpose of which is to provide an employee with prompt compensation for work-related injuries. Any possible difference in incentive to litigate the work-relatedness of an injury between the TTD and PTD hearings appears to be unpredictable, and in any event, insufficient to justify the majority's position. Moreover, issue preclusion would never apply if any difference in potential liability prevented its application. Instead, whether the parties had a similar incentive to litigate is both a question of degree and an exception to be applied on a case-by-case basis. Restatement (Second) of Judgments §§ 28(5) & cmt. J (1982). Here, Sunny Acres participated fully in the TTD hearing and actively opposed Cooper's claim that her injuries were work-related.

The majority also relies upon several child welfare cases.[9] In these cases, courts refused to apply collateral estoppel to factual findings made at temporary child welfare hearings in trials on the termination of parental rights. The courts deciding these cases suggested that a parent's incentive to litigate could be impacted by the lack of finality of the temporary hearing and the difference in the nature of the consequences between temporary orders and termination of parental rights. Such proceedings implicate fundamental rights and society's interest in protecting the best interests of the child.

---

**9.** *In re C.M.*, 675 N.E.2d 1134 (Ind.Ct.App.1997); *In re Frederick*, 405 Mass. 1, 537 N.E.2d 1208 (1989).

The need to evaluate these interests on an ongoing basis and a parent's motivation to cooperate with treatment in order to keep a family intact, or potentially to reunite a family, distinguish child welfare cases from workers' compensation proceedings concerning the work-relatedness of a claimant's injuries. For these reasons, I find the majority's reliance on child welfare cases unpersuasive.

The majority also looks for support in several cases in other jurisdictions in which courts have declined to apply issue preclusion without "articulating a clear rationale." Maj. op. at 49. However, these cases can be distinguished from the case at hand. In *Betts v. Townsends, Inc.*, 765 A.2d 531, 533–34 (Del.2000), the claimant's temporary disability resulted from his work-related injury, but the injury had subsequently resolved and was therefore not the cause of his partial disability. Similarly, the court in *Appeal of Hooker*, 142 N.H. 40, 694 A.2d 984 (1997), declined to mechanically apply collateral estoppel where claimant's condition was a work-related aggravation of his pre-existing but stabilized asthma. Although claimant had established that he suffered from a lung infection, expert testimony presented at a subsequent hearing distinguished claimant's asthma from the lung infection. Thus, the claimant's condition differed from the medical condition found to be casually related at the earlier hearing. *Id.* at 987. Finally, in *Pet. of Marlene F. Bailey*, 769 A.2d 360 (N.H.2001), issue preclusion did not prevent denial of the claimant's request for retirement benefits due to a previous award of temporary disability benefits in workers' compensation proceedings. The court declined to apply issue preclusion for two independent reasons. First, the two proceedings did not involve the same opposing parties. Second, even if the requirement of identity of parties had been satisfied, only the issue of the work-relatedness of the injury would be precluded. This is because the issue of whether the resulting disability was permanent, as required for retirement benefits, differed from the issue of temporary disability resolved in the earlier proceeding. Neither reason supports the majority's decision.

I am persuaded instead by cases in other jurisdictions that have specifically addressed issue preclusion in workers' compensation cases and concluded that after the initial showing of eligibility has been made, relitigation of these issues is barred. Specifically, in *Fox–Smythe Transportation Co. v. McCartney*, 510 P.2d 686 (Okla.1973), the Oklahoma Supreme Court held that medical evidence demonstrating the causal connection between a claimant's injury and his resulting disability at the temporary disability hearing precluded relitigation of this issue at the permanent disability hearing. Similarly, in *Van Houten v. Harco Construction, Inc.*, 655 A.2d 331 (Me.1995), the Maine Supreme Court held that the determination that a claimant suffered a work-related back injury at a hearing awarding partial incapacity benefits had preclusive effect at a subsequent hearing to recover benefits for psychological treatment related to chronic back pain. Likewise, in *Smith v. Industrial Commission*, 125 Ill.App.3d 999, 81 Ill.Dec. 199, 466 N.E.2d 1001 (1984), a temporary disability award was held conclusive as to the issue of causation. Finally, in *Tenorio v. State*, 931 P.2d 234 (Wyo.1997), the Wyoming Supreme Court specifically noted that collateral estoppel would have barred relitigation of causation in workers' compensation cases where the initial award was uncontested, absent a statute modifying the applicability and scope of collateral estoppel in such cases. Because I find the analysis presented in these cases persuasive, I would apply issue preclusion to findings of causation made at a TTD hearing to a subsequent PTD hearing.

Finally, in deciding whether to apply the equitable doctrine of issue preclusion to a PTD hearing in a worker's compensation case, I consider the unequal effect of failing to apply the doctrine. Theoretically, issue preclusion applies equally to either party, barring whichever party is not first successful from relitigating an issue. However, in the context of TTD and PTD hearings in workers' compensation cases, only the employer benefits from the majority's holding. As a practical matter, the Workers' Compensation Act precludes an employee from relitigating the work-relatedness of her injuries if she is not successful in persuading an ALJ

on that issue at a TTD hearing. Once TTD benefits are denied because the ALJ did not find the employee's injuries to be work-related, the employee either returns to work or loses her job. Despite the majority's refusal to apply issue preclusion, a claimant is not in a position to request a PTD hearing to relitigate. In contrast, under the majority's rule, the employer who receives an adverse ruling at a TTD hearing may relitigate the issue at a PTD hearing. Furthermore, the majority approach requires an employee who successfully establishes the work-relatedness of her injuries to prove the identical issues again each time additional benefits are sought. This approach is particularly troubling when the injuries are of a psychological nature, both because psychological injuries are more difficult to prove than physical injuries, and because hearing officers may have different views about the likelihood that certain psychological injuries resulted from a physical impact.

In conclusion, I agree with the court of appeals. Therefore, I would hold that the first ALJ's determination that Cooper's psychological impairment was work-related precluded the second ALJ from determining that it was not work-related. I also agree with the court of appeals that there are additional issues to be resolved at the PTD hearing that are not precluded. Thus, I believe the case should be remanded for the ALJ to determine whether Cooper's work-related psychological impairment rendered her permanently and totally disabled, therefore entitling her to an award of PTD benefits. Accordingly, I would affirm.

Chief Justice MULLARKEY and Justice BENDER join in this dissent.