The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
September 12, 2024

**2024COA102**

**No. 24CA0250, *Peitz v. Industrial Claim Appeals Office* — Labor and Industry — Workers' Compensation — Workers' Compensation Rules of Procedure — Division Independent Medical Examination (DIME) — Payments/Fees — Scope of Evaluation**

In this workers' compensation proceeding, a division of the court of appeals considers, for the first time, whether Rule 11-5 of the Workers' Compensation Rules of Procedure (WCRP), Div. of Workers' Comp. Rule 11-5, 7 Code Colo. Regs. 1101-3, prohibits a physician performing a division independent medical examination (DIME) from evaluating all aspects of a worker's injury in determining whether the worker has obtained maximum medical improvement (MMI).

WCRP 11-5 establishes a schedule of fees that a physician may charge for a DIME, based primarily on the designated body parts and date of injury on the application for a DIME. The division

rejects respondents' argument that the number of body parts selected pursuant to the fee schedule limits the scope of a DIME physician's examination to determine MMI.

Court of Appeals No. 24CA0250
Industrial Claim Appeals Office of the State of Colorado
WC No. 5-142-174

Jason Peitz,

Petitioner,

v.

Industrial Claim Appeals Office, Board of Water Works of Pueblo, and Travelers Casualty & Surety Co.,

Respondents.

ORDER SET ASIDE AND CASE
REMANDED WITH DIRECTIONS

Division VI
Opinion by JUDGE SCHUTZ
Lipinsky and Taubman*, JJ., concur

Announced September 12, 2024

Michael W. Seckar, P.C., Lawrence D. Saunders, Pueblo, Colorado for Petitioner

No Appearance for Respondent Industrial Claim Appeals Office

Ray Lego and Associates, Jonathan S. Robbins, Centennial, Colorado for Respondents Board of Water Works of Pueblo and Travelers Casualty & Surety Co.

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1     Jason Peitz appeals an order of the Industrial Claim Appeals Office (Panel) affirming a determination by an administrative law judge (ALJ) that he had reached maximum medical improvement (MMI) for all work-related conditions.  We set aside the Panel's order and remand with directions.

¶ 2     Resolution of this appeal requires us to consider, for the first time in a published opinion, whether Workers' Compensation Rule of Procedure 11-5, Div. of Workers' Comp. Rule 11-5, 7 Code Colo. Regs. 1101-3 (WCRP 11-5), requires a physician who is conducting a division independent medical examination (DIME) under section 8-42-107.2(2)(a)(I), (b)-(c), C.R.S. 2024, to consider only those body parts designated on the DIME application form.  We conclude that, when assessing whether a claimant is at MMI, a DIME physician may consider all relevant body parts, even if those body parts were not designated on the DIME form.

I.     Background

¶ 3     In February 2020, Peitz sustained an admitted work-related injury to his lower back while working as a mechanic for the Board of Water Works of Pueblo.  The next day, Peitz received treatment from Dr. Terrence Lakin, who completed a "Physician's Report of

1

Workers' Compensation Injury." Dr. Lakin diagnosed Peitz with a strain of muscle, fascia, and tendon in his lower back.

¶ 4    Dr. Lakin referred Peitz for x-rays and an MRI. The MRI showed stenosis at lumbar vertebrae 4-5 and degenerative disc disease. After conservative treatment did not help, in August 2020, Peitz consulted Dr. Jennifer Kang, an orthopedist, who recommended injections and, if the symptoms did not resolve in six months, a lumbar fusion. Thereafter, Peitz received injections, massage, and chiropractic care.

¶ 5    In October 2020, at the request of the Board of Water Works of Pueblo and its insurer, Travelers Casualty & Surety Co. (jointly, respondents), Peitz saw Dr. David Elfenbein for an independent medical exam (IME). At that time, Peitz's complaints included right hip pain, with a burning sensation in his groin. Dr. Elfenbein opined that the hip issue should be addressed before Peitz received further treatment for his spine.

¶ 6    One month later, Peitz was referred to Dr. Todd Miner for evaluation of the hip pain. Dr. Miner diagnosed Peitz with bilateral advanced hip osteoarthritis and recommended a bilateral hip replacement, which was performed in December 2020. Dr. Miner

2

evaluated Peitz virtually in April 2021. Peitz reported to Dr. Miner that his groin and thigh pain had essentially gone away.

¶ 7 Peitz continued to have low back pain, however, and Dr. Kang performed a lumbar fusion. According to Peitz's authorized treating physician (ATP), Dr. George Johnson, Peitz "had some physical therapy following the surgery but discontinued [it] due to his left groin pain that has been present since the surgery."

¶ 8 In July 2022, Peitz filed an "Application for Hearing" (AFH), checking the box for "medical benefits" as the issue to be considered. Under the section entitled "other issues to be heard at this hearing," Peitz stated that he had "been denied treatment for his groin and hips which should be covered under this claim."

¶ 9 On October 18, 2022, an ALJ conducted a hearing at which no testimony was taken but exhibits were entered, including Peitz's medical records and an IME that Dr. Wallace Larson had performed at respondents' request in September 2022. In the IME, Dr. Larson

3

opined that Peitz's left groin pain was likely an idiopathic[1] condition or related to the hip replacement and was not likely related to the back surgery.

¶ 10    In a November 2022 order, the ALJ found that Peitz had failed to prove that his hip or groin symptoms were related to his work injury. The ALJ found Dr. Larson's opinion credible and discounted as "conclusory" the ATP's opinion that the hip and groin issues were related to the back surgery. The ALJ therefore denied Peitz's request for benefits to cover treatment of his groin or hips and

---

[1] "Idiopathic" is defined as (1) "arising spontaneously or from an obscure or unknown cause" or (2) "peculiar to the individual." Webster's Third New International Dictionary 1123 (2002). In *City of Brighton v. Rodriguez*, 2014 CO 7, the Colorado Supreme Court stated,

> We have never explicitly defined "idiopathic." We have, however, used the term consistently with the leading treatise in the field: "Generally understood within the workers' compensation framework to mean 'self-originated,' [idiopathic] injuries usually spring from a personal risk of the claimant, e.g., heart disease, epilepsy, and the like. . . . Idiopathic injuries, therefore, often are not compensable."

*Id.* at ¶ 21 n.2 (quoting LexisNexis, *Larson's Workers' Compensation Glossary*, https://perma.cc/P6EV-TJSF).

reserved all other issues for future determination.  Peitz did not appeal that order.

¶ 11     In December 2022, Peitz again saw his ATP.  The ATP found that Peitz was at MMI and assigned a 30% whole person impairment rating.  Respondents sought a DIME.  They checked the boxes for "Region 4: Spine / Lumbar" on the "Notice and Application" as the body part to be evaluated in the DIME.

¶ 12     Dr. Paul Ogden conducted the DIME in April 2023, diagnosing Peitz with chronic pain disorder, axial low back pain, and left hip flexion weakness.  Dr. Ogden opined that Peitz was not at MMI because his chronic pain disorder and left hip pain still needed to be addressed.  Dr. Ogden stated that, to reach MMI, Peitz would need to be treated for the chronic pain disorder, including psychosocial evaluations and cognitive behavioral therapy.  He assigned a whole person impairment rating of 27%.

¶ 13     Respondents filed an AFH on May 12, 2023, checking the box for "other issues," which they listed as "Overcome DIME, not at MMI, compensable components."  The same ALJ conducted a hearing, at which Peitz did not testify but was represented by counsel.  Dr. Larson testified and Dr. Ogden's deposition was

5

entered into evidence by agreement of the parties. *See* § 8-43-210, C.R.S. 2024 ("Depositions may be substituted for testimony upon good cause shown.").

¶ 14 Shortly before the hearing, respondents moved for summary judgment, asserting that, because they did not ask for Peitz's hip to be evaluated during the DIME, Dr. Ogden could not address that body part, relying on WCRP 11-5. Paragraph (A) of WCRP 11-5 provides a schedule for the fees a DIME physician may charge based on the number of body parts selected, the date of injury, and, in exceptional circumstances, the number of medical records. Because respondents only checked the box for examination of the lumbar spine, they argued that Dr. Ogden erred when he considered Peitz's hip condition in assessing whether he was at MMI.

¶ 15 The ALJ issued an order listing the issues to be addressed at the hearing as whether respondents overcame the DIME determination that Peitz was not at MMI and the 27% whole person impairment rating. The ALJ found that respondents overcame the DIME determination that Peitz was not at MMI but failed to overcome the impairment rating.

¶ 16    The ALJ's order included the following conclusions:

> [T]he only body part selected by Respondents for consideration by the DIME [was] the lumbar spine. Since no other body part was selected, the DIME doctor's inclusion of hip and psychological [conditions] are beyond the scope of the DIME. As such, the doctor's opinions that [Peitz] is not at MMI for hip and psychological issues for chronic pain cannot be considered under [section 8-42-107.2(2)(b)].

The ALJ determined that (1) "[t]he parties are bound by the ATP's determination that [Peitz] is at MMI for all work-related conditions except for the lumbar spine"; (2) "[Peitz] is at MMI for the lumbar spine"; and (3) respondents failed to overcome the DIME's 27% impairment rating of Peitz.

¶ 17    Peitz filed a petition with the Panel to review the ALJ's order, arguing that the ALJ erred by concluding that Dr. Ogden was limited in the scope of his medical exam to the lumbar spine because that was the only body part respondents had selected on the DIME form. The Panel agreed with Peitz that WCRP 11-5 does not prevent a DIME physician from evaluating all body parts in determining MMI, regardless of the particular body parts selected on the DIME form. In support of this conclusion, the Panel cited its opinion in *Luis v. Spirit Hospitality*, W.C. No. 5-131-365, 2023 WL

7

8606393, at *12 (Colo. I.C.A.O. Dec. 4, 2023) ("Rule 11-5 does not prevent the DIME physician from evaluating any and all body parts in determining MMI. This is because Rule 11-5 uses the list of body regions to compute the DIME fee and not to limit the scope of the DIME evaluation.").

¶ 18    But the Panel also reasoned that, in this case — unlike *Luis* — the same ALJ had made an earlier final adjudication that Peitz's hip and groin problems were unrelated to his work injury. The Panel determined that the ALJ's initial order was therefore "*res judicata* as to the causation of the hip and groin problems."[2] The Panel concluded that the ALJ did not err by rejecting the DIME physician's opinion on MMI as to body parts that "had already been determined were not related to the injury." The Panel added, "Because the only basis provided by the DIME physician that [Peitz]

---

[2] Although the Panel initially used the phrase "res judicata," the context and subsequent discussion indicate it intended to refer to "issue preclusion." Like the parties on appeal, we will use the phrase "issue preclusion," which is discussed in greater detail below. *See Argus Real Est., Inc. v. E-470 Pub. Highway Auth.*, 109 P.3d 604, 608 (Colo. 2005) (noting that the use of the terms "res judicata" and "collateral estoppel" can cause confusion because "res judicata" was once commonly used to refer to both claim and issue preclusion).

was not at MMI [was] [his] hip and groin issues and psychological effects therefrom, we perceive no reversible error in the ALJ's conclusion that [Peitz] had reached MMI for the spine injury." Peitz now appeals the Panel's decision to this court.

## II. Standard of Review and Legal Principles

¶ 19 We may set aside a Panel order if the factual findings are not sufficient, there are unresolved evidentiary conflicts, the findings do not support the order or are unsupported by the record, or the award or denial of benefits is not supported by the law. § 8-43-308, C.R.S. 2024.

¶ 20 The Workers' Compensation Act of Colorado (the Act), §§ 8-40-101 to -47-209, C.R.S. 2024, is the exclusive remedy available to employees for workplace injuries in Colorado. To provide care to an injured employee under the Act, the employer or the employer's insurer identifies a list of providers from which the employee selects an ATP. § 8-43-404(5)(a)(I)(A), C.R.S. 2024. After providing the perceived necessary care, the ATP determines whether the employee has reached MMI and, if so, the degree of any permanent impairment. § 8-42-107(8)(b)(I), C.R.S. 2024.

¶ 21 If any party disputes the findings or determinations of the ATP, the party shall request a DIME. *See* § 8-42-107.2(2)(a)(I), (b). The DIME physician then examines the claimant and makes an independent finding of the claimant's condition. The DIME physician's findings may be overcome only by clear and convincing evidence. § 8-42-107(8)(b)(III).

## III.   Issues Presented

¶ 22 Peitz raises three issues in this appeal:

- whether the Panel erred by finding that Dr. Ogden's opinion that Peitz was not at MMI due to the need for chronic pain treatment could be ignored because any need for such treatment was caused solely by his hip and groin issues;

- whether the Panel erred by finding that issue preclusion applied because the ALJ made an earlier finding that Peitz's hip and groin problems were unrelated to his work injury; and

- whether the Panel erred by not remanding the case back to the ALJ after it ruled in his favor on the scope of the DIME.

10

¶ 23    In their answer brief, respondents assert the same argument they unsuccessfully presented to the Panel: that WCRP 11-5 prevents the DIME physician, in determining MMI, from evaluating any body part not designated on the DIME form.  In his reply brief, Peitz notes that respondents failed to make any arguments to rebut his first two issues on appeal.

## IV.    Analysis

¶ 24    We first address the parties' arguments regarding whether WCRP 11-5 precludes a DIME physician from considering body parts not designated on the DIME form when assessing whether a claimant is at MMI.  We then address whether the Panel properly applied the doctrine of issue preclusion.  Finally, we address whether the Panel erred by concluding that Dr. Ogden determined that Peitz's need for psychological treatment was based solely on the pain associated with his hip and groin issues.

## A.    WCRP 11-5

¶ 25    As noted, Peitz prevailed before the Panel on his interpretation of WCRP 11-5, but in defending the Panel's order before this court, respondents continue to argue that WCRP 11-5 prohibits a DIME physician from considering any body part not designated when

determining if a claimant is at MMI.  We elect to address this issue first.

¶ 26    WCRP 11-5(A) provides a schedule to determine the amount of fees that a physician may charge for a DIME, based primarily on the designated body parts and date of injury.  Respondents rely on WCRP 11-5(A) to argue that the Director of the Division of Workers' Compensation, who promulgates the WCRP, must have meant to limit the scope of a DIME physician's examination to the designated body parts.  But the statute addressing DIMEs makes no mention of any substantive limitation on the examining physician's assessment of MMI based on the number of body parts selected on the DIME form, *see* § 8-42-107.2, and WCRP 11-5 is also silent on the matter.  We cannot read language into a rule, and we must give effect to the rule's plain language.  *See Smith v. Exec. Custom Homes, Inc.*, 230 P.3d 1186, 1191 (Colo. 2010) (court cannot give a statute a meaning that the plain language does not support); *Woolsey v. Colo. Dep't of Corr.*, 66 P.3d 151, 153 (Colo. App. 2002) ("In construing an administrative rule or regulation, we apply the same rules of construction as we would in interpreting a statute.").

¶ 27    Respondents argue that, because they selected only the spine on the DIME form, Dr. Ogden erred by also considering the impact of Peitz's hip and groin conditions — and related chronic pain — in determining whether he was at MMI.  In other words, they argue that the DIME physician should have reviewed only those body parts that respondents selected.  In rejecting this argument, the Panel concluded that Rule 11-5 uses the list of body parts to compute the DIME fee, not to limit the scope of the DIME evaluation.

¶ 28    We agree with the Panel.  Nothing in the applicable statute or rules prohibits a DIME physician from addressing all relevant body parts when assessing whether a claimant has reached MMI.  *See Leprino Foods Co. v. Indus. Claim Appeals Off.*, 134 P.3d 475, 482-83 (Colo. App. 2005) (In determining MMI, the DIME physician may assess, "as a matter of diagnosis, whether the various components of the claimant's medical condition are causally related to the industrial injury."); *see also Martinez v. Indus. Claim Appeals Off.*, 176 P.3d 826, 827 (Colo. App. 2007) (same).

¶ 29    At oral argument, the division asked respondents' counsel to identify the specific language in WCRP 11-5 supporting their

contention that it was intended to limit the number of body parts a DIME physician may consider when assessing MMI. Respondents' counsel pointed generally to that portion of the rule referring to the number of body parts checked on the form, the date of the injury, and the extent of the medical records. But as previously noted, these considerations are contained in WCRP 11-5(A), the portion of the rule used to set the fee that a physician may charge for a DIME. No language in the rule evinces any intent to preclude a DIME physician from considering all relevant body parts — checked or unchecked — that may be related to MMI.

¶ 30 Thus, we hold that, when assessing MMI, a DIME physician may consider all relevant body parts, even if those body parts were not designated on the DIME form.

## B. Issue Preclusion

¶ 31 Peitz asserts that, after rejecting respondents' WCRP 11-5 argument, the Panel should have remanded this case to the ALJ. But respondents assert that Dr. Ogden was precluded from considering Peitz's hips and groin, and his related psychological issues stemming from chronic pain, when determining whether he

had reached MMI due to the preclusive effect of the ALJ's prior order. We disagree with respondents for multiple reasons.

¶ 32   The purpose of issue preclusion is "to bar relitigation of an issue." *Madalena v. Zurich Am. Ins. Co.*, 2023 COA 32, ¶ 21 (quoting *Villas at Highland Park Homeowners Ass'n v. Villas at Highland Park, LLC*, 2017 CO 53, ¶ 29). A party seeking to bar relitigation of an issue must show that

> (1) the issue is identical to an issue actually litigated and necessarily adjudicated in the prior proceeding; (2) the party against whom estoppel was sought was a party to or was in privity with a party to the prior proceeding; (3) there was a final judgment on the merits in the prior proceeding; and (4) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issues in the prior proceeding.

*Id.* (quoting *Villas at Highland Park*, ¶ 29).

¶ 33   The same parties appeared at both hearings, so the second element of issue preclusion was met. But the remaining elements of issue preclusion were not satisfied.

¶ 34   We agree with Peitz that the Panel erred as a matter of law by holding that "whether [Peitz's] ongoing hip and groin symptoms were causally related to the work-related injury was resolved, by

15

final judgment, against [him] in the ALJ's order of [November 23, 2022.]" The issue that the ALJ addressed in that order was whether Peitz had proved entitlement to medical benefits for treatment to his groin and hips because those issues were related to his admitted work-related back injury. Nowhere in that order did the ALJ discuss or determine MMI. Peitz asserts that the issues are therefore not identical and cites *Ortega v. JBS USA, LLC*, W.C. No. 4-804-825, 2013 WL 3325150 (Colo. I.C.A.O. June 27, 2013), in support of his argument.

¶ 35     In *Ortega*, the Panel reasoned,

> The difficulty with the respondents' position [of issue preclusion] lies in the extent it would allow for the prelitigation of the MMI and impairment rating issues prior to the application of the DIME process. Those issues would be determined at a hearing by a preponderance of the evidence standard. The statute[,] however, provides that a DIME determination of those issues is to be reviewed at a hearing by a clear and convincing standard. The tactic of litigating those issues, by either party, as a means of obtaining advantage in the DIME process is inconsistent with the aim of the statute.

*Id.* at *3.

16

¶ 36 The Panel's reasoning in *Ortega* is consistent with the analysis in *Sunny Acres Villa, Inc. v. Cooper*, 25 P.3d 44 (Colo. 2001), in which the Colorado Supreme Court held that issue preclusion did not apply to a determination made at a temporary benefits hearing because the parties did not have the same incentive to litigate as they did at a permanent benefits hearing. *See id.* at 47 ("It is settled law that a full and fair opportunity to litigate an issue requires not only the availability of procedures in the earlier proceeding commensurate with those in the subsequent proceeding, but also that the party against whom collateral estoppel is asserted has had the same incentive to vigorously defend itself in the previous action.") (citations omitted); *see also Holnam, Inc. v. Indus. Claims Appeals Off.*, 159 P.3d 795, 799 (Colo. App. 2006) (recognizing that issue preclusion does not apply when the two proceedings are subject to different standards of proof).

¶ 37 At the first hearing, Peitz sought medical benefits for treatment related to his hips and groin. When that request was denied, he returned to his ATP, who determined he was at MMI and had a 30% impairment rating. Rather than accept the ATP's findings, respondents applied for a DIME. The DIME resulted in a

17

finding that Peitz had not reached MMI, which respondents challenged at the second hearing.

¶ 38    In our view, the Panel erred by determining that the issue of whether Peitz could receive benefits for treatment of his hip and groin was identical to the issues presented at the second hearing, which respondents' own AFH described as "Overcome DIME, not at MMI, compensable components."

¶ 39    The rationale of *Sunny Acres* and *Ortega* supports the conclusion that issue preclusion does not apply here because "prelitigation" of the DIME process is inconsistent with the statute, the issues addressed by the ALJ and DIME physician are not identical, and Peitz did not have the same information and incentive to litigate causation prior to the DIME physician's determination of MMI. Therefore, the ALJ's initial resolution of causation in the treatment context should not be given preclusive effect and thereby usurp the DIME process for determining MMI.

¶ 40    Moreover, because the first hearing never addressed MMI or impairment, the ALJ decided it based on the preponderance of evidence standard. § 8-43-201(1), C.R.S. 2024. At the second hearing, respondents had to overcome by clear and convincing

evidence the conclusion that Peitz was not at MMI. § 8-42-107(8)(b)(III); *see also* Restatement (Second) of Judgments § 28(4) (Am. L. Inst. 1982) (application of issue preclusion may be affected by different burdens of proof).

¶ 41    For these reasons, we hold that the Panel erred by concluding that issue preclusion barred any portion of Dr. Ogden's determination of MMI.

### C.    Need for Psychological Treatment

¶ 42    Finally, we also agree with Peitz that the Panel erred by concluding that his need for psychological treatment arose only from his hip and groin pain. During Dr. Ogden's deposition, which was part of the evidentiary record before the ALJ, respondents' counsel specifically asked Dr. Ogden whether he was recommending psychological treatment because of Peitz's hip or back. Dr. Ogden replied that it was mainly due to Peitz's back injury. Respondents' counsel asked, "Now, the functional limitations that Mr. Peitz complained of that led you to opine he needs his chronic pain program are we talking about the left hip or are we talking about the back?" Dr. Ogden replied, "It's primarily the back." This testimony was consistent with Dr. Ogden's report,

19

in which he concluded that most of Peitz's psychological issues from chronic pain were attributable to his back injury.

¶ 43 Despite the above testimony, as well as Dr. Ogden's report documenting that he felt the need for psychological treatment was mainly associated with Peitz's back injury, the Panel specifically said in its order that Dr. Ogden stated that the need for psychological treatment was solely based on Peitz's hip and groin issues. This was a clearly erroneous finding based on the evidence. As such, we must set it aside. *See* § 8-43-308.

## V. Disposition

¶ 44 We set aside the Panel's order with instructions to remand this case to the ALJ to address the issues raised in respondents' May 12, 2023, AFH, consistent with the conclusions set forth herein.

JUDGE LIPINSKY and JUDGE TAUBMAN concur.