Compensation Appeals Board
No. 95-608

## APPEAL OF JONATHAN NEWCOMB

### (New Hampshire Compensation Appeals Board)

March 12, 1997

*Law Office of Pamela D. Albee,* of Ossipee (*Teresa Mahoney Mullen* on the brief and orally), for the petitioner.

*Wiggin & Nourie, P.A.*, of Manchester (*Scott A. Ewing* on the brief, and *Thomas Aylesworth* orally), for respondent Pizza Hut.

*Wadleigh, Starr, Peters, Dunn & Chiesa*, of Manchester (*Christine Desmarais-Gordon* on the brief and orally), for respondent Highwatch Neurorehabilitation Center.

JOHNSON, J. The petitioner, Jonathan Newcomb, appeals the decision of the New Hampshire Compensation Appeals Board (board) denying his claim for workers' compensation. The board found that the petitioner was not entitled to receive compensation from his former employers, respondents Pizza Hut and Highwatch Neurorehabilitation Center (Highwatch), because he had failed to establish that he was currently disabled by an injury pursuant to RSA 281-A:2, XI (Supp. 1996). We affirm.

On June 20, 1992, the petitioner, then an employee of Pizza Hut in North Conway, injured his knee after slipping on a wet floor at the restaurant. He sought treatment in July 1992 for continued pain in his right knee and eventually received workers' compensation benefits from Pizza Hut as a result of his injury. X rays taken shortly after his injury proved "unremarkable," and a subsequent MRI taken in August 1992 showed only a "probable minor bone bruise." The petitioner eventually underwent diagnostic arthroscopic surgery in September 1992, which revealed no significant abnormalities. At a follow-up visit to his orthopedic surgeon in November 1992, the petitioner reported that he felt "at least 95% better," and was subsequently released to return to work on November 9, 1992. The petitioner never returned to Pizza Hut and instead began working at Highwatch in December 1992.

According to the petitioner, a few months after beginning his employment at Highwatch, he began to experience elevated levels of pain in his right knee. When he returned to his orthopedic surgeon in September 1993, he complained of "mild discomfort" in his right knee. Because his discomfort did not abate, the petitioner ceased working that month and has since consulted a number of specialists in an attempt to explain his discomfort. Eventually, Dr. Michael O'Connell, an anesthesiologist, diagnosed his ailment as reflex sympathetic dystrophy (RSD). Dr. O'Connell made his diagnosis by performing a lumbar sympathetic nerve block, which the petitioner alleges is the only diagnostic test available that detects RSD.

The board held a hearing to determine whether the petitioner was disabled as a result of his fall at Pizza Hut or experienced an aggravation of a preexisting knee condition because of his employment at Highwatch. The board denied the petitioner's claim, ruling that:

> The preponderance of the evidence does not establish that either the fall at Pizza Hut or the performance of his duties at Highwatch are the legal and medical cause of the claimant's currently disabling chronic right knee pain because the claimant has not established that he is currently disabled by an injury . . . .

The board's ruling was based in part on a finding that:

> No physician from New Hampshire's North Country to Boston's Lahey Clinic [has] found an objectively discernable explanation for the claimant's perceived symptoms. His X-rays, MRI and physical examinations all indicate that . . . his right knee . . . [is] without disease, structural damage or any other abnormality. Two of claimant's examining physicians have, therefore, by this process of exclusion, arrived at a diagnosis of Reflex Sympathetic Dystrophy, which diagnosis is doubted by two others upon the ground of the absence of some diagnostic criteria they assert must be present for the RSD diagnosis to be properly made.

The petitioner's motion for rehearing was denied, and this appeal followed.

On appeal, the petitioner argues that the board's ruling that he had not met his burden to prove medical and legal causation constituted reversible error because it was against the weight of the evidence and was not based on competent medical evidence.

Our standard of review is well-settled. "We will overturn the board's decision only for errors of law, or if we are satisfied by a clear preponderance of the evidence before us that the order is unjust or unreasonable." *Appeal of Kehoe*, 141 N.H. 412, 415, 686 A.2d 749, 752 (1996). "Our task is not to determine whether we would have found differently than did the board, or to reweigh the evidence . . . ." *Appeal of Lalime*, 141 N.H. 534, 539, 687 A.2d 994, 999 (1996) (quotations omitted).

The petitioner first argues that the board erred in concluding that he had not met his evidentiary burden to establish medical and legal causation because "no competent contrary evidence was submitted by either [respondent] to diminish the weight of the evidence submitted by the [petitioner]." "In workers' compensation cases, a claimant has the burden of proving by competent evidence both the existence of a compensable accidental injury and the extent of his disability. The claimant must prove both medical and legal causation by a preponderance of the evidence." *Appeal of Briand*, 138 N.H.

555, 557, 644 A.2d 47, 48 (1994) (quotations and citations omitted). Once the claimant has established a *prima facie* case, the burden of production shifts to the respondent. *Lalime,* 141 N.H. at 537, 687 A.2d at 997. "The burden of persuasion, [however], remains with the claimant . . . ." *Id.*

Medical causation requires a showing that the injured worker's disability was actually caused by the work-related event. *Appeal of Cote,* 139 N.H. 575, 578-79, 660 A.2d 1090, 1093 (1995). Proof of legal causation, on the other hand, entails a demonstration that the injury is work-connected. *Id.* at 578, 660 A.2d at 1093. Here, the board's holding that the claimant has not established that he is currently disabled goes to the question of medical causation; namely, whether a work-related activity has caused his perceived disability *as a matter of medical fact. See Appeal of Briggs,* 138 N.H. 623, 629, 645 A.2d 655, 659 (1994). The board's findings of fact are deemed to be *prima facie* reasonable, *see* RSA 541:13 (1974), and this presumption can only be overcome by a showing that there was no competent evidence from which the board could conclude as it did. *See Appeal of Lambrou,* 136 N.H. 18, 20, 609 A.2d 754, 755 (1992).

■■ Therefore, the central inquiry in this case is whether there was competent medical evidence in the record supporting the board's finding that the petitioner was not currently disabled due to a work-related injury, *i.e.,* that he did not suffer from RSD. This question is best answered by medical experts, and as long as competent evidence supports the board's decision, we will not reverse its determination even if other evidence would lead to a contrary result. *Appeal of Commercial Union Ins. Co.,* 140 N.H. 429, 433, 666 A.2d 987, 990 (1995).

We find that the board's ruling was supported by competent evidence in the record. Specifically, respondent Pizza Hut presented the medical report of Dr. John Welch who concluded, after examining the patient, that "the evidence for reflex sympathetic dystrophy is very slim if not non-existent in view of the lack of demonstrable autonomic findings in either leg." Furthermore, Dr. Edward Tarlov, who evaluated the petitioner at the request of Dr. O'Connell, advised against surgical intervention to treat the petitioner, noting, "My own experience with pain surgery over the years has been disappointing *when the underlying diagnosis is less than clear*." (Emphasis added.) Even Dr. Bruce Samuels, who stated in June 1994 that it "[s]eems almost certain that [the petitioner] has a reflex dystrophy," later noted that with respect to the petitioner's continuing pain "[i]t is all quite unclear to me" and that "[h]e makes me very uncomfortable by his history and he makes me very uncom-

fortable by the lack of physical findings." Consequently, we find that there was sufficient medical evidence before the board to reasonably support its finding that the petitioner failed to prove the existence of a compensable injury. We reject the petitioner's argument that the board must construe all reasonable doubts in favor of the petitioner, since that directive pertains not to the task of weighing evidence, but to the construction of the workers' compensation statutes. *See, e.g., Lalime*, 141 N.H. at 540, 687 A.2d at 998-99.

■ The petitioner next argues that the medical testimony of Dr. O'Connell was the only *competent* medical testimony since he was the only doctor to perform a sympathetic nerve block on the petitioner. That test, the petitioner alleges, is the only method with which to diagnose RSD reliably. He argues that Dr. Welch was not qualified to address the issue of RSD because he did not perform a sympathetic nerve block and made his diagnosis before Dr. O'Connell had positively diagnosed the patient with RSD. Respondent Pizza Hut answers that a sympathetic nerve block is not the sole method to diagnose RSD, another being the presence of certain objectively discernable physical symptoms. Pizza Hut argues that Dr. Welch's diagnosis was competent because it was based upon an objective finding that the petitioner did not exhibit any outwardly visible manifestations of RSD. Furthermore, Pizza Hut argues that Dr. O'Connell's diagnosis was less reliable since the results of a sympathetic nerve block depend, in turn, on the subjective impressions of the patient. Both sides quote the medical literature provided by the petitioner to support their assertions regarding the most reliable diagnostic tool for RSD. For example, while one of the articles stated that the best diagnostic approach was to conduct a sympathetic nerve block, it also described certain outward physical manifestations which can accompany RSD. *See* Schwartzman & McLellan, *Reflex Sympathetic Dystrophy*, 44 ARCHIVES OF NEUROLOGY 555, 556-57 (1987). Another article, however, fails to mention the use of sympathetic nerve block as a *diagnostic* tool, and instead instructs physicians: "If there is no other explanation for the pain and if, along with the characteristic pain, neurovascular and/or dystrophic changes are present, RSD[] should be considered." Johnson, *Reflex Sympathetic Dystrophy Syndrome*, 28 CONTEMP. ORTHOPAEDICS 374, 374 (1994).

The board, as the trier of fact, may disregard, in whole or in part, an expert's testimony when, as in this case, it is faced with conflicting expert testimony. *Tzimas v. Coiffures By Michael*, 135 N.H. 498, 501, 606 A.2d 1082, 1083 (1992). "This is especially so when the expert opinion . . . derives at least in part from narrative

from the patient-petitioner himself, whose credibility is thereby the subject of inquiry." *Appeal of Gamas,* 138 N.H. 487, 491, 642 A.2d 925, 927 (1994). The board had before it medical records and literature upon which it could reasonably conclude that the presence of objectively discernable symptoms of RSD is necessary to support a finding of disability. Furthermore, it was free to give less weight to the results of the sympathetic nerve block test since its outcome relied on the petitioner's account of its effectiveness. Therefore, we are unable to conclude that the petitioner, on appeal, has shown by a clear preponderance of the evidence that the board's findings did not rest on *competent* medical evidence or were otherwise unreasonable. *See* RSA 541:13.

The petitioner also argues that the board failed to recite reasons for rejecting Dr. O'Connell's diagnosis of RSD. The petitioner argues that this constituted error since "no medical expert disput-[ed] or even review[ed] Dr. O'Connell's findings." "Although the board is entitled to ignore uncontradicted medical testimony, it must identify the competing evidence or the considerations supporting its decision to do so." *Kehoe,* 141 N.H. at 418-419, 686 A.2d at 754. "The purpose of this requirement is to provide a basis for presenting to this court the questions of law arising on the facts found by the trial court." *Lambrou,* 136 N.H. at 20, 609 A.2d at 755-56 (quotations omitted). The parties, however, did dispute whether the petitioner in fact had RSD and implicitly whether a sympathetic nerve block is the sole diagnostic test. Therefore, we cannot find that the board's failure to address Dr. O'Connell's findings specifically was error since they do not rise to the level of "uncontradicted medical testimony."

■ Because we affirm the board's ruling that the petitioner did not establish medical causation, we need not address the issue of legal causation. *Cf. Briand,* 138 N.H. at 557, 664 A.2d at 48 (claimant must prove both medical and legal causation). Consequently, we affirm the ruling of the board denying the petitioner's claim for workers' compensation benefits.

*Affirmed.*

All concurred.