Compensation Appeals Board
No. 95-555

## APPEAL OF JAMES A. HOOKER

### (New Hampshire Compensation Appeals Board)

May 28, 1997

*Bouchard & Mallory, P.A.*, of Manchester (*Christine Friedman* on the brief and orally), for the claimant.

*Devine, Millimet & Branch, P.A.,* of Manchester (*Charles T. Giacopelli* and *John E. Friberg, Jr.* on the brief, and *Mr. Friberg* orally), for the respondent, F. C. Hammond & Son Lumber Co., Inc.

JOHNSON, J. The claimant, James A. Hooker, appeals from a decision of the New Hampshire Compensation Appeals Board (board) denying him workers' compensation benefits. We affirm.

On December 6, 1989, the claimant was injured while working as a mechanic for the respondent, F. C. Hammond & Son Lumber Co., Inc. (F. C. Hammond). While he was attempting to add wood to the fire in his workplace woodstove, flames shot out and set his hair and beard on fire. The claimant was taken to Mary Hitchcock Memorial Hospital and admitted for treatment of facial burns and observation for a possible inhalation injury.

According to the medical records and testimony before the board, the claimant had experienced various respiratory problems prior to the December 6, 1989, incident. For instance, the claimant had suffered from seasonal asthma since about the age of four. At the age of thirteen, the claimant was hospitalized for pneumonia. At sixteen, the claimant was again hospitalized and diagnosed with allergic broncho-pulmonary aspergillosis (ABPA).

Following the 1989 accident, the claimant continued treatment with Dr. Donald A. Mahler, his attending physician at Mary Hitchcock. F. C. Hammond's financial responsibility for such treatment was litigated at a hearing before the department of labor. By letter dated January 25, 1991, the labor department hearing officer confirmed the decision she had issued verbally at the hearing, stating, in pertinent part:

> It was found that the claimant's continuing asthmatic condition is a work related aggravation of his pre-existing but stabilized childhood asthma. The treatment he is receiving from Dr. Mahler at the Dartmouth Hitchcock Medical Center is treatment made necessary by his work related condition. . . . [T]he claimant's bills for treatment at the Dartmouth Hitchcock Medical Center and his various prescriptions are the responsibility of [F. C. Hammond's workers' compensation insurance] carrier and shall be paid.

This decision was not appealed within thirty days and therefore became final. *See* RSA 281-A:43, II (Supp. 1996).

In July 1993, the claimant entered into a lump sum settlement of all known and unknown claims and potential claims against F. C. Hammond for the December 6 incident "with the sole exception of

the causally related medical bills." *See* RSA 281-A:37, II (Supp. 1996) (prohibiting lump sum settlement of the medical provisions of RSA chapter 281-A).

In recent years, the claimant has suffered a significant decline in his pulmonary health and become increasingly dependant on bronchodilators, pain medication, and antibiotics. He is apparently now a candidate for a lung transplant. The claimant sought to have the medical bills related to his recent condition paid by F.C. Hammond's insurer, but the insurer denied liability.

On October 13, 1994, a hearing was held before a second labor department hearing officer, who found that the "medical treatment that [the claimant] has been receiving is no longer related to the December 6, 1989 temporary aggravation of the preexisting condition and is no longer the responsibility (if it ever was to begin with) of the carrier." On appeal, a majority of the board also found no causal relation between the claimant's medical condition at that time and the December 6, 1989, accident. The board rejected the claimant's argument that F. C. Hammond should have been precluded on the basis of collateral estoppel or res judicata from litigating the issue of causation. The claimant appeals to this court, arguing that the board's refusal to give res judicata effect to the 1991 findings of the first hearing officer was erroneous.

■ Res judicata applies to final agency decisions in workers' compensation cases. *See, e.g., Portsmouth Police Dept. v. Mortimer*, 121 N.H. 417, 419, 430 A.2d 185, 186 (1981). In its broadest sense, the term res judicata "cover[s] all the various ways in which a judgment in one action will have a binding effect in another." *Morin v. J.H. Valliere Co.*, 113 N.H. 431, 433, 309 A.2d 153, 155 (1973). Although the claimant has couched his arguments in res judicata terms, we note that more precisely he is seeking to apply collateral estoppel, a doctrine we have described as "an extension of res judicata which prevents the same parties, or their privies, from contesting in a subsequent proceeding on a different cause of action any question or fact actually litigated in a prior suit." *Scheele v. Village District*, 122 N.H. 1015, 1019, 453 A.2d 1281, 1284 (1982).

■ The minimum requirements for applying collateral estoppel are:

> the issue subject to estoppel must be identical in each action, the first action must have resolved the issue finally on the merits, and the party to be estopped must have appeared in the first action, or have been in privity with

someone who did so. The party to be estopped must have had a full and fair opportunity to litigate the issue. In addition, the finding must have been essential to the first judgment.

*Petition of Gilpatric*, 138 N.H. 360, 362-63, 639 A.2d 267, 268-69 (1994) (citations omitted). Since the claimant asserts that collateral estoppel applies, he has the burden of proving that the issue claimed to be subject to estoppel is identical to the issue determined previously. *See Morin*, 113 N.H. at 434-35, 309 A.2d at 155-56. We find that the claimant has not met his burden.

■ This case concerns the responsibility of F. C. Hammond for certain medical expenses incurred by the claimant. "An employer . . . has a continuing obligation to provide or to pay for medical, hospital, and remedial care for as long as is required by an injured employee's condition." *Appeal of Cote*, 139 N.H. 575, 581, 660 A.2d 1090, 1095 (1995) (quotation omitted). Determining whether this obligation applies in a particular case requires us to "examine the causal chain between the original . . . work-related injury" and the condition for which the treatment sought to be paid for was received. *Id.*

The claimant contends that a causal connection between his medical condition and the 1989 accident was found by the first hearing officer, and could not be relitigated before the board. The claimant cites cases from other jurisdictions supporting the general proposition that "the issue of causation in cases involving an industrial accident . . . is not an issue subject to change and should, therefore, ordinarily be barred from relitigation by the doctrine of res judicata once a final judgment has been entered." *AMP, Inc. v. Ruebush*, 391 S.E.2d 879, 881 (Va. Ct. App. 1990) (emphasis and italics omitted). As the *AMP* court itself noted, however, "[a]n injury by accident differs from an occupational disease, which may be latent or progressive." *Id.* We therefore find a mechanical application of collateral estoppel inappropriate in the instant case, which involves the effects of a discrete industrial accident superimposed upon a history of pulmonary disease.

■ Moreover, there was evidence before the board that the condition the claimant suffered from in 1995 was not the same as that which the first hearing officer found in 1991 to be work-related. In the 1991 proceeding, the first hearing officer determined that "the claimant's *continuing asthmatic condition* is a work related aggravation of his pre-existing but stabilized childhood asthma."

(Emphasis added.) In a videotaped deposition, Dr. Mahler described the claimant's condition in 1995 as chronic lung infection developed in association with bronchiectasis, requiring intravenous administration of antibiotics and bronchodilator therapy. Dr. William Graham, a medical doctor certified in internal medicine and pulmonary disease, testified that ABPA-related bronchiectasis is distinct from asthma. We therefore find that the board could reasonably have concluded that the claimant's condition for which the medical expenses at issue had been incurred was not the same as that found by the first hearing officer to have been causally related to the 1989 accident. Accordingly, the board did not err in finding collateral estoppel inapplicable to the element of causation, as the issue before the board was not identical to that previously decided by the first hearing officer.

The claimant argues that Dr. Graham's testimony should have been excluded on collateral estoppel grounds because it contradicted the first hearing officer's final determination as to whether the claimant sustained a work-related injury at all. We are unable to find, however, that Dr. Graham's testimony contradicted a factual finding of the first hearing officer. Specifically, Dr. Graham testified that it was his "very strong feeling . . . that [the claimant] did not have a burn injury to his lungs below his vocal cords." Like the board, we do not find in the first hearing officer's decision a specific determination that the claimant sustained an injury to his lungs. She stated:

> You will recall that the claimant testified that he had suffered injury to his throat and respiratory system after exposure to smoke and fire when a wood stove blew back at him at Hammond Lumber Co. on December 6, 1989. He was treated at the [Dartmouth] Hitchcock Clinic for burns on his throat and a worsened asthmatic condition.

We are unable to read this ambiguous statement as a finding that would bar Dr. Graham's testimony on collateral estoppel grounds. *Cf. Petition of Gilpatric*, 138 N.H. at 363, 639 A.2d at 269 ("question[ing] whether the threshold requirement for collateral estoppel, namely the existence of a finding by the trial court, is met by this casual language in the trial court order"). This is particularly so because the first hearing officer's decision contains no clear indication that the claimant needed to have sustained a burn injury to his lungs in order to have experienced the aggravation of his asthma which the first hearing officer found compensable.

■ The claimant also challenges the board's failure to give preclusive effect to the 1993 lump sum settlement. He argues that since the lump sum settlement was, according to statute, based on a determination of compensability, *see* RSA 281-A:37 (Supp. 1996), it should have precluded F. C. Hammond from contesting compensability in 1995. The settlement agreement, however, expressly provides that it is not a settlement of medical bills. Moreover, "[c]ollateral estoppel may be invoked to preclude reconsideration of an issue only when the issue has been actually litigated. Where . . . the final judgment . . . was based on a stipulation of settlement, the issue asserted for preclusion was not actually litigated." *M.A. Crowley Trucking v. Moyers,* 140 N.H. 190, 195, 665 A.2d 1077, 1080 (1995) (citations omitted). Thus, collateral estoppel does not apply to any issues conceded in the lump sum settlement.

■ Finally, the claimant argues that the board erred in finding that F. C. Hammond was not responsible for the medical bills at issue because F. C. Hammond failed to prove that some intervening or superseding event broke the chain of causation. We disagree. While it is true that "[o]nce the work-connected character of any injury has been established, the subsequent progression of that condition remains compensable so long as the worsening is not shown to have been produced by an independent nonindustrial cause," *Appeal of Cote,* 139 N.H. at 581, 660 A.2d at 1095 (1995) (quotation omitted), the claimant bears the burden of proving the causal connection between the condition for which benefits are sought and the work-related injury. *See, e.g., id.* at 582, 660 A.2d at 1095; *Town of Hudson v. Wynott,* 128 N.H. 478, 483, 522 A.2d 974, 977 (1986).

This is not a case in which one of the parties is seeking review under RSA 281-A:48 of an award or denial of compensation on the basis of an asserted "change in conditions," which that party has the burden to prove. *See Appeal of Elliot,* 140 N.H. 607, 610, 675 A.2d 204, 206 (1996). Rather, in this case the claimant seeks to have medical expenses paid pursuant to RSA 281-A:23. RSA 281-A:48, I, regarding a "change in conditions," explicitly provides that "[t]his section shall not apply to requests for extensions of medical and hospital benefits, or other remedial care, which shall be governed solely by those sections of this chapter relating thereto." RSA 281-A:48, I (Supp. 1996). Thus, the claimant was required to meet his burden of proof on the issue of causation under RSA 281-A:23, I.

The board found that the claimant failed to prove a causal connection between the condition for which he incurred the medical

bills at issue and the 1989 accident. "We will overturn the board's decision only for errors of law, or if we are satisfied by a clear preponderance of the evidence before us that the order is unjust or unreasonable." *Appeal of Newcomb*, 141 N.H. 664, 666, 690 A.2d 562, 564 (1997) (quotation omitted). "[A]s long as competent evidence supports the board's decision, we will not reverse its determination even if other evidence would lead to a contrary result." *Id.* at 667, 690 A.2d at 564. We find that there was competent evidence to support the board's decision in this case.

Dr. Graham testified that he did not think the "deterioration of [the claimant's] condition [wa]s related to the accident at all." Rather, he attributed the decline in the claimant's health to the natural progression of his pre-existing conditions. On the other hand, the board was also presented with the testimony of Dr. Mahler and Dr. D. Thomas Akey, Jr., who stated that in their opinions, the claimant's condition was caused by the work-related accident. When presented with such conflicting testimony, the board is free to accept or disregard it in whole or in part. *See id.* at 668, 690 A.2d at 565. The board gave less weight to the opinions of Drs. Mahler and Akey because they "did not review the x-ray and pulmonary tests generated prior to the fire, nor did their opinions account for the reality of Claimant's preexisting lung condition." On our review of the evidence, we cannot say that the board's decision was legally erroneous or unreasonable. Accordingly, we affirm the board's decision.

*Affirmed.*

All concurred.