NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Compensation Appeals Board
No. 2021-0369

APPEAL OF CAITLYN WITTENAUER
(New Hampshire Compensation Appeals Board)

Argued: April 14, 2022
Opinion Issued: September 7, 2022

Normandin, Cheney & O'Neil, PLLC, of Laconia (James F. LaFrance on the brief and orally), for the claimant.

Mullen & McGourty, P.C., of Salem (Matthew J. Solomon and Craig A. Russo on the brief, and Matthew J. Solomon orally), for Nike, Inc.

MACDONALD, C.J. The claimant, Caitlyn Wittenauer, appeals the decision of the New Hampshire Compensation Appeals Board (CAB) denying her workers' compensation benefits. We affirm.

The following facts are supported by the record. On August 15, 2019, the claimant injured her left shoulder lifting boxes at her job working for the respondent, Nike, Inc. As a result of the injury, she experienced pain in her shoulder and numbness into her left hand. An MRI disclosed that her "left shoulder was dislocated, with the ball joint out of place." She received corrective surgery on December 17, 2019, followed by months of physical therapy treatments. On April 21, 2020, the claimant's treating physician approved her return to full-time work with restrictions on lifting. She returned

to work at Nike in May.  The claimant received temporary total disability benefits beginning October 16, 2019, and ending May 4, 2020.

On September 3, 2020, the claimant reported to her treating physician that her shoulder was feeling stiff and she was experiencing pain "when she tries to do anything overhead."  He limited her work to five hours a day with no other restrictions.  On September 25, the claimant complained of pain in the left side of her neck, and her treating physician took her out of work.  In his follow-up note dated October 8, the physician reported that "[e]xamination of the shoulder . . . demonstrate[d] overall good stability and range of motion. [The claimant] really does not appear to have any gross instability of the shoulder, possibly some mild instability.  Most of her pain is really periscapular going up into her neck."  On October 22, the physician concluded that "[m]ost of the problem really appears to be in her neck and around the periscapular and trapezial musculature.  At this point, the shoulder itself does not seem too bad."  On November 19, the physician reported that his examination of the claimant did not demonstrate "any overt shoulder instability" and noted that the shoulder was "really significantly better since surgery and really no evidence of any gross instability."

The claimant sought temporary partial disability benefits for the period September 4, 2020 to September 25, 2020, and temporary total disability benefits beginning September 26, 2020.  Nike's insurance carrier denied benefits on grounds that the "9/25/2020 medical- Neck is not compensable to" the August 15, 2019 shoulder injury, as there was no causal relationship to employment.

The claimant challenged the carrier's denial by requesting a hearing before the Department of Labor.  Following a hearing on December 9, 2020, the hearing officer determined that the claimant did not meet her burden of proving that her "symptoms after September 25, 2020, are more probably than not related to the initial work injury."  The hearing officer noted that after determining in September 2020 that the claimant was totally disabled again, the treating physician "recorded her problem as pain in the left side of her neck and upper back."  However, the hearing officer noted, the Workers' Compensation Medical Forms (WCMF) completed by the treating physician "[did] not contain any reference to these new symptoms."  Accordingly, the hearing officer found that "the left sided neck and upper back pain are new symptoms for which she did not treat from the date of injury" in August 2019 until September 25, 2020.  The hearing officer concluded that "[w]ithout a more detailed explanation and opinion from the treating physician, . . . the claimant failed to meet her burden of proof."

The claimant appealed to the CAB and a de novo hearing was held on May 13, 2021.  The claimant was the only witness to testify.  Prior to the hearing, the claimant's treating physician provided a written narrative to the

claimant's attorney dated March 30, 2021. The narrative stated that, while the claimant sustained a work-related injury on August 15, 2019, which resulted in "shoulder instability," the injury "also resulted in an injury to her cervical spine in addition to resulting in a probable brachial plexopathy as a traction type injury that has resulted in [her] ongoing symptoms consistent with neurogenic type pain" and that her "ongoing neurogenic type pain as a result of the neck injury and probable brachial plexopathy is causally related to the" August 15, 2019 accident.

The CAB ruled that the claimant did not meet her burden of proving by a preponderance of the evidence "that the medical treatments starting on 9/3/2020 and out of work order by [the treating physician] [was] causally related to the work injury on 8/15/2019." The CAB found that the physician "ha[d] not provided any medical explanation for the new mention of a 'neck injury' and related 'probable brachial plexopathy' when neither had been part of the medical record before the 3/30/2021 narrative." As the CAB explained,

> The notes from the provider and Claimant's testimony provide no specific information of a new work injury or an aggravation of the surgically repaired left shoulder. Worker's compensation panels are cautioned to leave complex medical issues to the competent medical personnel. Expert testimony is required whenever the matter to be determined is so distinctly related to some science, profession, business or occupation as to be beyond the ken of the average layman. A sound medical opinion will be based on the adequate facts from the record that, would here allow a connection from the first injury and treatments to the second, similar painful treated area. Here, there is no adequate connection between the two conditions.

(Quotation and citation omitted.) The CAB denied the claimant's request for reconsideration. This appeal followed.

On appeal, the claimant argues that the CAB erred: (1) by placing a burden upon her to demonstrate another work incident occurring between her return to work in May 2020 and her second onset of disability in September 2020; and (2) in failing to analyze and make findings as to whether her disability in September 2020 was due at least in part to the work injury she suffered in August 2019.

We will overturn the CAB's decision only for errors of law, or if we are satisfied by a clear preponderance of the evidence before us that the decision is unjust or unreasonable. Appeal of Dean Foods, 158 N.H. 467, 471 (2009). The CAB's factual findings are prima facie lawful and reasonable. Id.; see RSA 541:13 (2021). In reviewing the CAB's findings, our task is not to determine whether we would have found differently than did the board, or to reweigh the

3

evidence, but rather to determine whether the findings are supported by competent evidence in the record. Appeal of Dean Foods, 158 N.H. at 474. As the appealing party, the claimant bears the burden of proof. Id. at 471.

In a workers' compensation case, the claimant must prove both legal and medical causation by a preponderance of the evidence. Appeal of Newcomb, 141 N.H. 664, 666 (1997). Proof of legal causation requires demonstrating that the injury is work-connected. Id. at 667. To prove medical causation, the claimant must show that the work-related activities either caused or contributed to her disability as a matter of medical fact. Appeal of Briggs, 138 N.H. 623, 629 (1994).

Medical causation is a matter properly within the province of medical experts, and the CAB is required to base its findings on this issue upon the medical evidence rather than solely upon its own lay opinion. Appeal of Demeritt, 142 N.H. 807, 810 (1998). In accord with that requirement, the CAB reviewed the medical evidence, including the WCMFs and the treating physician's office notes. After doing so, the CAB determined that "[w]hile [the treating physician's] narrative certainly described the initial injury and treatment with a strong medical foundation, he ha[d] not provided any medical explanation for the new mention of a 'neck injury' and related 'probable brachial plexopathy' when neither had been part of the medical record before the 3/30/2021 narrative."

The CAB is not bound to accept any uncontradicted evidence, even expert testimony, Appeal of Lambrou, 136 N.H. 18, 20 (1992), unless "the complexity of the . . . issues involved, the unequivocal nature of the testimony, and the absence of any articulated reason to discount it" compel its acceptance, Town of Hudson v. Wynott, 128 N.H. 478, 486 (1986). If the CAB "declines to accept uncontroverted evidence, it must state its reasons for doing so." Appeal of Lambrou, 136 N.H. at 20. Here, the CAB did not accept the treating physician's statement that in August 2019 when the claimant injured her shoulder at work, she also injured her cervical spine and neck, because the claimant's medical record never mentioned either injury.

Our review of the record supports the CAB's determination. The initial WCMF dated August 21, 2019, states the diagnosis of the claimant's work injury as "Pain in left shoulder, Left Shoulder; biceps tendonitis." The subsequent WCMFs contain the same diagnosis, and the physician's notes record the claimant's "Chief Complaint" as "follow up of left shoulder." On this record it was not unreasonable for the CAB to determine that because there was no "medical explanation" for the treating physician's "new mention of a 'neck injury' and related 'probable brachial plexopathy' when neither had been part of the medical record before the 3/30/2021 narrative," the medical causation element "ha[d] not been met by a preponderance of the medical evidence."

4

Accordingly, we need not address the claimant's argument that, to prove legal causation, the CAB improperly applied a burden of proof requiring her to establish a new workplace injury.  See Appeal of Newcomb, 141 N.H. at 666 (explaining that the claimant must prove both legal and medical causation).

Affirmed.

HICKS, BASSETT, and HANTZ MARCONI, JJ., concurred.