NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Compensation Appeals Board
Case No. 2024-0471
Citation: Appeal of State of N.H. (Adjutant General), 2025 N.H. 40

APPEAL OF STATE OF NEW HAMPSHIRE (ADJUTANT GENERAL)
(New Hampshire Compensation Appeals Board)

Argued: May 6, 2025
Opinion Issued: September 12, 2025

Bernard & Merrill, PLLC, of Manchester (Kevin W. Stuart on the brief and orally), for the petitioner.

Shaheen & Gordon, P.A., of Nashua (Jared P. O'Connor on the brief and orally), for the respondent.

COUNTWAY, J.

[¶1] The petitioner, Constitution State Services, TPA for the State of New Hampshire (Adjutant General) (employer), appeals an order of the New Hampshire Compensation Appeals Board (CAB) granting the respondent, Kimberly Galimberti (widow), workers' compensation benefits pursuant to RSA 281-A:26 (2023). The employer argues the CAB erred by: (1) finding the widow's claim was not time-barred by RSA 281-A:42-d; (2) finding a work-related injury; and (3) not applying the version of RSA 281-A:17 in effect on the date of injury. We affirm.

[¶2] The following facts were found by the CAB or are otherwise undisputed by the parties. The widow's husband (the decedent) started as a volunteer firefighter with the Farmington and Middleton Fire Departments around 2002 and then began working full time around 2008. Starting around 2008, he also worked full time at Pease Tradeport in Portsmouth. The State of New Hampshire (Adjutant General) was his employer at Pease Tradeport. Although the decedent previously smoked, he stopped in 2000. When the decedent began working at Pease Tradeport, he was medically examined and found to be cancer free.

[¶3] On February 15, 2019, the decedent first sought treatment for a condition later diagnosed as intrahepatic cholangiocarcinoma (ICC), or bile duct cancer. Around this time, the employer submitted a report of injury, on behalf of the decedent, to the Department of Labor. Workers' compensation benefits were denied by the employer, however, and the decedent did not pursue the claim further. The decedent died from cancer on January 23, 2020.

[¶4] In April 2020, the widow applied for "line of duty" death (LODD) benefits. See RSA 21-I:29-a (Supp. 2024) (Death Benefit for Employees Killed in Line of Duty). Although benefits were initially denied, the widow appealed, and LODD benefits were ordered to be paid. The widow then requested workers' compensation death benefits on January 17, 2023. The employer, and then the Department of Labor, denied the claim. The widow appealed to the CAB and the CAB held a hearing.

[¶5] At the hearing, the widow presented testimony from Dr. Cochran, a specialist in internal and occupational medicine. The CAB relied upon Cochran's medical opinion that "[t]o a reasonable degree of medical certainty, [the decedent's] cholangiocarcinoma of the ICC type is causally related and contributed to by his exposures to multiple class I carcinogenic agents in the essential job functions of his long career as a firefighter." The employer presented a medical report on cancer development and ICC from Dr. Pulde. The CAB found that the scientific basis for Cochran's opinion was better supported than was Pulde's opinion.

[¶6] The CAB found that the widow is entitled to the prima facie presumption that cancer in firefighters is work related. In addition, with respect to legal causation, the CAB found that "reasonable testimony and expert reports indicate there are multiple potential exposures in [the decedent's] service as a firefighter as the basis for the sudden emergence of ICC cancer." With respect to medical causation, the CAB found that the widow's medical expert "presented a credible chain of exposures and risk factors that establish medical causation by a preponderance of the evidence." Ultimately, the CAB concluded that the widow "met her burden under RSA 281-A:2, by a preponderance of the evidence that [the decedent's] regular firefighter duties put him in the position where he in fact did contract ICC cancer." Finally, the

2

CAB concluded that the widow's workers' compensation claim was not time-barred by RSA 281-A:42-d.  The employer filed a motion for reconsideration, which the CAB denied.  This appeal followed.

[¶7] Our standard of review of CAB decisions is established by statute. Appeal of Rancourt, 176 N.H. 139, 143 (2023); RSA 541:13 (2021).  All findings of the CAB upon all questions of fact properly before it are deemed prima facie lawful and reasonable.  Appeal of Rancourt, 176 N.H. at 143.  Accordingly, our review of the CAB's factual findings is deferential.  Id.  The burden of proof rests upon the appealing party to show that these findings are "clearly unreasonable or unlawful."  Id. at 144 (quotation omitted).  In reviewing the CAB's factual findings, our task is not to determine whether we would have found differently than did the CAB, or to reweigh the evidence, but rather to determine whether the findings are supported by competent evidence in the record.  Id.

I.      RSA 281-A:42-d

[¶8] We first address the employer's argument that the widow's claim is time-barred by RSA 281-A:42-d.  To do so, we must engage in statutory interpretation.  The interpretation of a statute is a question of law, which we review de novo.  Appeal of Estate of Menke, 177 N.H. __, __ (2025), 2025 N.H. 10, ¶10.  In matters of statutory interpretation, we first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning.  Appeal of Vasquez, 175 N.H. 450, 453 (2022).  We interpret the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include.  Id.  We construe all parts of a statute together to effectuate its overall purpose and to avoid an absurd or unjust result.  Id.  We consider words and phrases not in isolation, but in the context of the statute as a whole in order to better discern the legislature's intent and to interpret statutory language in light of the policy or purpose sought to be advanced by the statutory scheme.  Id.  We construe the Workers' Compensation Law liberally to give the broadest reasonable effect to its remedial purpose.  Appeal of Estate of Menke, 177 N.H. at __, 2025 N.H. 10, ¶10.

[¶9] The employer argues that the widow's claim for benefits is a continuation of the decedent's claim for benefits.  The widow argues that her claim for death benefits under RSA 281-A:26 is distinct from the decedent's claim, and thus her claim was not time-barred by RSA 281-A:42-d.  For the reasons that follow, we agree with the widow.

[¶10] RSA 281-A:42-d provides in part: "Compensation for disability, rehabilitation, medical benefits, or death benefits under this chapter shall be barred unless the claimant petitions for a hearing under RSA 281-A:43 within 18 months after the claimant receives notice that the claim has been denied by

3

the insurance carrier or self-insurer." RSA 281-A:42-d (2023) (emphases added). The employer is correct that the term "claimant" includes dependents. N.H. Admin. R., Lab 101.02 ("'Claimant' means a person who has a claim under the laws and rules administered by the department [of labor]."). Thus, the issue we must decide is whether the widow's claim for death benefits is simply a continuation of the decedent's prior claim, and therefore had to be filed within 18 months of the denial of the decedent's prior claim, or whether it is a separate and distinct claim, which therefore could be filed within 18 months after the widow's claim for death benefits was denied.

[¶11] In Brown v. Hubert, we examined the 1947 amendment to the Workers' Compensation Law, which provided that "'if death results from the injury, the employer shall pay to, or for the dependent or dependents of the deceased employee' a certain amount of compensation." Brown v. Hubert, 100 N.H. 194, 196 (1956) (quoting Laws 1947, 266:20). We held that by enacting this amendment, the legislature intended to create a system "by which [the employee's] death creates in a dependent widow or child a right of action separate and distinct from that of the deceased employee." Id. (quotation omitted). We accordingly concluded that where the employee executed a settlement with his employer before he died, the settlement could only affect the employee's right of action — not the dependents'. Id. Thus, the dependents did not have a duty to apply for a modification of the settlement as it was "not related to their rights as dependents which arose over two years thereafter." Id. at 197.[1]

[¶12] The employer argues that because Brown was decided before the enactment of RSA 281-A:42-d in 1994, Brown did not address whether death benefits are governed by RSA 281-A:42-d. We nonetheless determine that the case is instructive. Our holding in Brown is reflected in the language of RSA 281-A:26. RSA 281-A:26 provides that "[i]f death results from an injury, weekly compensation shall be paid to the dependents of the deceased employee," RSA 281-A:26, and accordingly gives dependents a right of action "separate and distinct" from that of the decedent employee. Brown, 100 N.H. at 196.

[¶13] Because the widow's claim for death benefits under RSA 281-A:26 is "separate and distinct" from the decedent's claim for benefits, id., she was not required to petition for a hearing within 18 months after the decedent's claim was denied. Her claim for death benefits was not denied by the employer until February 2023. The widow had 18 months from February 2023 to

---

[1] The employer argues that because the injury here was not established before the decedent's death, this case is distinguishable from Brown, in which the work-related injury had been determined before the employee died. We disagree, however, that an employee's death creates a separate and distinct right of action only when there is a pre-existing determination of a compensable work-related injury.

4

petition for a hearing, and she did so.  We accordingly conclude that the CAB did not err in finding that the widow's claim was not time-barred by RSA 281-A:42-d.

[¶14] The employer argues that if the legislature had intended to create a separate right for dependents to pursue death benefits after the time limit to request a hearing on the decedent's claim for benefits had expired, it could have excluded death benefits from RSA 281-A:42-d.  Because we conclude that a claim for death benefits is a new claim, distinct from any prior claim made by the decedent, the employer's denial of the decedent's claim did not affect the timeliness of the widow's petition for a hearing on her claim.

[¶15] Finally, the employer argues that it is unclear what date of injury the CAB found: the date the decedent was first treated for cancer, or the date of his death.  The employer argues that, to the extent the CAB relied upon the date of death as the date of injury, that is plain legal error.  We disagree.  The widow did not have a cognizable claim for death benefits until the decedent's death.  Accordingly, the relevant date of injury for the widow's claim is the decedent's date of death.  Hirsch v. Company, 97 N.H. 480, 486 (1952) (determining that dependents have a separate right of action and that "the rights of the dependents are to be determined according to the law in force at the time the rights arose, namely, upon the death of the employee"); Brown, 100 N.H. at 197 (concluding that there was no "duty on the [dependents] to apply for a modification of [the employee's] settlement since that settlement was not related to their rights as dependents which arose over two years thereafter").

### II. Medical Causation

[¶16] We next address the employer's argument that the CAB erred in finding a work-related injury because there was no competent medical evidence to support a finding of medical causation.  Based upon our review of the record, we disagree.

[¶17] "In a workers' compensation case, the claimant must prove both legal and medical causation by a preponderance of the evidence." Appeal of Wittenauer, 175 N.H. 420, 423 (2022).  "The test for medical causation requires the claimant to establish, by a preponderance of the evidence, that work-related activities probably caused or contributed to the injury as a matter of medical fact." Appeal of Estate of Dodier, 174 N.H. 548, 555 (2021).  "Medical causation is a matter properly within the province of medical experts, and the board is required to base its findings on this issue upon the medical evidence rather than solely upon its own lay opinion." Appeal of Kehoe, 141 N.H. 412, 417 (1996) (quotation and brackets omitted).  "[A]s long as competent evidence supports the board's decision, we will not reverse its determination even if

5

other evidence would lead to a contrary result." Appeal of Newcomb, 141 N.H. 664, 667 (1997).

[¶18] The employer contends that Cochran's medical evidence was "not competent" because she did not base her report upon scientific studies. Specifically, the employer asserts that Cochran's testimony at the hearing that "there's no statistical analysis [on cholangiocarcinoma] that you can do that's going to give you any results," means that her conclusion on causation was unsupported. As Cochran explained in her report and at the hearing, however, cholangiocarcinoma is a rare cancer and thus, there is limited peer-reviewed literature or data specific to cholangiocarcinoma. She further noted that "[a]bsence of data is not the same as not understanding or knowing that there is increased risk." Cochran relied upon medical literature about cholangiocarcinoma, and about carcinogens and cancer in firefighters, to support her conclusion that "[t]o a reasonable degree of medical certainty, [the decedent's] cholangiocarcinoma is causally related to his exposure to the Class 1 carcinogen PAH in his long career as a firefighter."

[¶19] The employer also argues that Cochran "merely speculated on causation based on [the decedent's] workplace exposures" because she conceded that she was not aware of the actual levels of those exposures. In her report, however, Cochran summarized the findings of peer-reviewed studies to show that class 1 carcinogens are present at fire scenes, in firehouses, and in the gear the firefighters wear. Although Cochran did not make an onsite visit to Pease Tradeport and did not know exactly how many fires and jet fuel exposures the decedent experienced, she did conduct a review of the decedent's occupational history, which was based in part on Pulde's report. We accordingly conclude that the CAB did not err by finding the medical evidence presented by Cochran to be sufficiently competent.

[¶20] Finally, the employer argues that the CAB erred by not according substantial weight to the decedent's treating oncologist. While it is true that "[t]reating physicians are especially important in a workers' compensation case," and that "their reports must be accorded substantial weight," Appeal of Morin, 140 N.H. 515, 519 (1995) (quotation omitted), "factfinders are free to disregard or accept, in whole or in part, conflicting expert testimony," Appeal of Rancourt, 176 N.H. at 144. The CAB found that "there is a reasonable scientific basis for the conclusion by Cochran," and explained that the exhibits and testimony supported her opinion. Accordingly, we conclude that the CAB did not err by relying upon Cochran's report and testimony.

III. Legal Causation

[¶21] RSA 281-A:17 establishes "a prima facie presumption that cancer disease in a firefighter . . . is occupationally caused" where certain conditions are met. RSA 281-A:17, II (Supp. 2024). "The statutory presumption relieves a

6

firefighter of proving legal causation," i.e., that the cancer was causally related to his employment. Cunningham, Adm'x v. Manchester Fire Dep't, 129 N.H. 232, 235 (1987) (discussing the statutory presumption related to heart disease in firefighters).

[¶22] The CAB found that the widow was "entitled to the prima facie presumption because certain conditions have been met," including that the decedent "ceased smoking in or around year 2000." The employer argues that the CAB erred in so finding because it failed to apply the version of RSA 281-A:17 that was in effect on the date the decedent first sought treatment — February 15, 2019.

[¶23] In February 2019, RSA 281-A:17, II required that, to have the benefit of the prima facie presumption, the firefighter "guarantee that he or she has lived a tobacco free life." RSA 281-A:17, II(a) (Supp. 2018) (amended 2019, 2023). In July 2019, however, the statute was amended to add, in relevant part, that "[f]or the purposes of this section, a person lives a 'tobacco free lifestyle' if he or she has not, within the past 6 months, used any tobacco product . . . 4 or more times in a week." RSA 281-A:17, II(e) (2023) (as added by Laws 2019, 251:6, eff. July 17, 2019).

[¶24] Even if we assume, without deciding, that the CAB should have applied the statute that was in effect in February 2019, we conclude that any such error would be harmless. "Proof of legal causation requires demonstrating that the injury is work-connected." Appeal of Wittenauer, 175 N.H. at 423. The CAB found that "[l]egal causation evidence was presented by witness testimony and expert reports to the multiple 'potential exposures' in the workplace," and that "reasonable testimony and expert reports indicate there are multiple potential exposures in [the decedent's] service as a firefighter as the basis for the sudden emergence of ICC cancer." Because we determine these findings are supported by competent evidence in the record, we conclude that the CAB did not err in finding legal causation.

[¶25] In conclusion, we determine that: (1) the widow's claim is separate and distinct from the decedent's claim and her claim for death benefits is accordingly not time-barred by RSA 281-A:42-d; and (2) there was competent evidence in the record for the CAB to find both medical causation and legal causation.

Affirmed.

MACDONALD, C.J., and DONOVAN, J., concurred.